## MASON v. PERKINS, Appellant.

Division One, March 17, 1904.

1. **JUDGMENT FOR MALICIOUS PROSECUTION: Discharge in Bankruptcy.** A judgment for malicious prosecution is not discharged by a discharge in bankruptcy under the United States bankrupt law.

2. **BANKRUPTCY: Discharge: As Affecting Fixed Rights.** Where the rights of the parties to the land in suit became fixed before the proceeding in voluntary bankruptcy was begun by their common source of title, a judgment of discharge in that proceeding can have no place in the suit to determine the interests in the land of the adverse claimants.

3. **SHERIFF'S DEED: Relation.** A sheriff's deed under execution when delivered relates back to the date of its execution and takes effect from that date against the judgment debtor and all other persons except innocent purchasers for value and without notice.

4. ————: **Consideration: Recital.** A recital in the sheriff's return on the execution that the purchase price of one hundred dollars was paid him by the grantee named in his deed is conclusive proof that the purchase price was paid.

5. **FRAUDULENT CONVEYANCE: Grantee Charged With Knowledge.** The grantee in a deed is charged with knowledge of the fraudulent character of his deed and the intent of the grantor.

6. ————: **From Father to Son.** When a father strips himself of everything he owns that is subject to execution, in the face of a suit pending against him and about to be tried, and conveys his property to his son, in alleged payment of a vague and uncertain claim for services rendered to him by the son years before, it is a fair circumstance to be considered in determining the bona fides of the transaction.

Appeal from Greene Circuit Court.—*Hon. Jas. T. Neville,* Judge.

AFFIRMED.

*J. A. Moon* for appellant.

On February 19, 1901, and six days prior to the delivery of the sheriff's deed to Mr. Hamlin conveying the land in controversy, L. B. Perkins received his final discharge in bankruptcy. On February 26, 1902, Mr. Hamlin goes to the sheriff's office, and pays for this deed and records same, and the only consideration paid by him for the deed was the Vandiver judgment. Our contention is, that this Vandiver judgment was declared dead in the Federal court, and could not be used, as value, to pay for this tract of land; that Mr. Mason and Hamlin saw fit to abandon the sale of this land, and instead of taking up the deed, filed their claim in the bankruptcy proceedings, and could not afterward take their claim out, at will, and pay for this land, and thereby receive title for same. Had they believed said bankrupt Perkins conveyed any property in fraud of his creditors, it was their privilege and their sole and only remedy and recourse to make application, in the said bankruptcy proceedings, to have the trustee

therein bring a suit to annul any alleged fraudulent conveyance of the debtor's property, and subject the same to the payment of his debts—that all creditors might share alike in the proceeds, if any.   They went into one court and they must stay there.   Dodd v. Middleton, 63 Ga. 635; Bankrupt Law, sec. 70, par. "E."

*O. T. Hamlin* for respondent.

(1)   That portion of defendant's answer stricken out would be no defense, for the reason that the judgment under which the property was sold was for malicious prosecution and injuries to the person of the said Vandiver; therefore it would not be affected by a discharge in bankruptcy.   (2)   The evidence fully warranted the trial court in finding as it did for plaintiff.

MARSHALL, J.—This is a proceeding under section 650, Revised Statutes 1899, to determine the interests of the parties to the east half of the northeast quarter of section 29, township 30, range 20, in Greene county.   The circuit court decreed the title to the plaintiff and the defendant appealed.   The facts are these:

Both parties claim title under L. B. Perkins, the father of the defendant.   The plaintiff claims title by a conveyance from O. T. Hamlin, who purchased the property at a sheriff's sale thereof under an execution based upon a judgment for five hundred dollars in favor of Mellie Vandiver and against L. B. Perkins, rendered by the circuit court of Polk county, on April 18, 1900, in an action for damages for malicious prosecution of said Mellie Vandiver by said L. B. Perkins.   And the defendant claims title by virtue of a deed to him from his father, L. B. Perkins, and his wife, dated April 14th and recorded April 17, 1900.

The judgment under which the plaintiff claims was rendered on April 18, 1900, and the deed under which the defendant claims was dated April 14, 1900, and the

execution was levied on April 19th, and the deed was recorded on April 17, 1900.

The plaintiff claims that the deed to the defendant was voluntary, and made for the purpose of hindering, delaying and defrauding the creditors of the grantor, and especially said Mellie Vandiver. On the other hand the defendant claims that the deed to him from his parents was made as a preference, and to pay him for seven years' services he rendered to his father after he attained his majority.

The defendant claims that at the sale under the execution on July 20, 1900, O. T. Hamlin became the purchaser of the property for one hundred dollars, but that he refused to pay the purchase price, and no deed was then made to him, and that thereafter on September 4, 1900, L. B. Perkins was adjudged a voluntary bankrupt by the United States district court, and that the judgment in favor of Mellie Vandiver was proved up and allowed against his estate, and that he was afterwards finally discharged in bankruptcy by the court, in consequence of which he was released from said judgment, and hence it can not be enforced against this land; and further that the sheriff's deed to Hamlin was dated February 25, 1901, and was without consideration, and is of no effect. On the other hand the plaintiff contends that L. B. Perkins' discharge in bankruptcy is wholly immaterial in this case, and that under the Federal bankrupt act he is not released by that discharge from the Vandiver judgment.

The trial court on motion struck out all the allegations of the answer with reference to the bankruptcy proceedings, and tried the case solely upon the question of whether the deed to the defendant is fraudulent, and found it to be so, and divested the title out of the defendant and vested it in the plaintiff.

## I.

The first question in this case is whether the discharge in bankruptcy released L. B. Perkins from the Vandiver judgment.

Section 17, par. 2, of the Bankrupt Act of 1898, expressly declared that: "A discharge in bankruptcy shall release a bankrupt from all his provable debts, except such as . . . (2) are judgments in actions for frauds, or obtaining property by false pretenses or false representations, or for willful and malicious injuries to the person or property of another," etc. [U. S. Comp. Stats. 1901, vol. 3, p. 3428.] The Vandiver judgment was based entirely upon a willful and malicious injury to the person of Mellie Vandiver, and hence the discharge in bankruptcy did not release L. B. Perkins from that judgment.

## II.

But aside from this, *quoad* the rights of these parties to this land, in a State court, the bankruptcy proceedings are wholly immaterial. The judgment was rendered on April 18, 1900, and the deed to the defendant was made on April 19, 1900, and the deed to the defendant was made on April 14, 1900. The execution was levied on this land on April 19, 1900, and the deed to the defendant was recorded on April 17th. This land was sold under execution by the sheriff on July 20, 1900, and the sheriff's deed to Hamlin was acknowledged on August 6, 1900, and the bankruptcy proceedings were not begun until September 4, 1900.

Therefore, whatever rights these parties have to this land, *inter sese*, became fixed before the bankruptcy proceedings were begun, and hence are not affected by those proceedings.

The record shows that the sheriff's deed to Hamlin was "filed for record February 25th, at 10:45 a. m.,

1900,'' but this is manifestly a clerical error in the transcript, and 1901 was intended, for the judgment had not even been rendered on February 25, 1900. But this circumstance cuts no figure in this case, for the reason that when the deed was delivered it related back to its execution, and took effect as against L. B. Perkins and all others except innocent purchasers for value and without notice, and the defendant does not come within that class as is hereinafter shown. .

The sheriff recites in his return on the execution that the purchase price of one hundred dollars was paid to him by O. T. Hamlin, and that concludes all question as to that matter.

## III.

The only remaining question in the case is whether the deed from L. B. Perkins and wife to the defendant was voluntary and made to hinder, defraud and delay the creditors of L. B. Perkins, and especially Mellie Vandiver, or whether it was a bona-fide preference to the defendant in consideration of the sum of one dollar and of what L. B. Perkins owed his son, the defendant, for services theretofore rendered him.

In 1899 the case of Mellie Vandiver v. L. B. Perkins, had been tried. and resulted in a verdict for the pliantiff, but a new trial had been granted. The case was set for trial a second time on April 16th. L. B. Perkins owned the land in controversy, which was worth about two hundred dollars, and also owned some property on Commercial street in Springfield, which was worth about $3,000. The defendant, his only son, lived at home for about seven years after he attained his majority and helped his father in running the business. No wages were agreed upon, but they say the father agreed to give him a piece of property. About three years before the deed was made the son left home and went to work at Monett. On the 14th of April the

son came home on a visit, and the father deeded to him all the property he owned, including both tracts of real estate aforesaid. The next day was Sunday. The case was set for hearing on Tuesday, April 17th. The plaintiff's evidence was adduced by three o'clock and the defendant's evidence was adduced before night. Some time that day L. B. Perkins, the father, sent his son, the defendant, a telegram saying his mother was well. She had not been sick and in fact was at the time attending the trial. Whether or not the telegram had a covert meaning does not appear, but it does appear that the defendant at once put the deed, that his parents had made to him on Saturday, on record. No reason is given why it was not recorded on Monday, April 16th or on Saturday the 14th, the day on which it was executed.

The only debts that L. B. Perkins scheduled in bankruptcy were the Vandiver judgment for $500, and one debt to John Kelly for $30 or $40. Immediately after L. B. Perkins was discharged in bankruptcy he paid the debt he owned Kelly, and told him he had gotten rid of the Vandiver judgment by the discharge in bankruptcy, and that he was then going over to the collector's office "to pay my taxes."

The defendant, the son, is charged with a knowledge of the fraudulent character and intent of the conveyance of his parents to him, and yet he does not even take the stand in his own behalf in this case. Under such circumstances there is no room for reasonable men to fairly differ as to the character of the deed from L. B. Perkins and wife to their son, the defendant. They knew and he knew the Vandiver case was set for trial the next week, and Mrs. Perkins was candid and guileless enough to say that they knew the case had been decided against them once, and they didn't know what would happen.

When a father strips himself of everything he owns that is subject to execution, in the face of a suit

pending against him and about to be tried, and conveys his property to his son, in alleged payment of a very vague and uncertain claim for services that had been rendered to him by his son years before, it is a fair circumstance to be considered in determining the bona fides of the conveyance. [Robinson v. Dryden, 118 Mo. 534.] And when such circumstances are added to the other facts present in this record and herein referred to, there is no room left for doubt as to the character of the conveyance.

There is abundant evidence to support the finding of the chancellor, and finding no errors of law in the record, the judgment of the circuit court is affirmed. All concur.